UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

IN RE:

Edward W. Cicero and Katherine J. Cicero,   Case No. 06-43959
                                            Chapter 7
             Debtors.                       Hon. Phillip J. Shefferly
_____/

Conquest Construction Company, Inc.,

        Plaintiff,

v.                                          Adv. Proc. No. 06-4852

Edward W. Cicero,

        Defendant.
_____/

**OPINION DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION OF ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S MOTION FOR DISMISSAL**

I. Introduction

This opinion addresses Defendant's motion for reconsideration of the Court's order denying Defendant's motion for dismissal or summary judgment in this adversary proceeding. For the reasons set forth in this opinion, Defendant's motion is denied.

II. Procedural History

On June 30, 2006, Plaintiff, Conquest Construction Company, Inc., filed a complaint objecting to the discharge of Edward W. Cicero under § 727 of the Bankruptcy Code and seeking a determination of non-dischargeability of a debt under § 523 of the Bankruptcy Code. The complaint contained three "counts." The counts variously referred to § 727(a)(3)-(5) and § 523(a)(2), (4) and (6) of the Bankruptcy Code. Defendant filed a motion to dismiss the complaint

under Fed. R. Civ. 12(b)(6), incorporated by Fed. R. Bankr. P. 7012, and for summary judgment under Fed. R. Civ. P. 56, incorporated by Fed. R. Bankr. P. 7056. Plaintiff filed a response and a brief in support and Defendant filed a reply brief to Plaintiff's response. Defendant subsequently filed a supplemental reply brief, to which he attached a transcript of a recent bench opinion from an unreported case in this district in which a party to an unrelated adversary proceeding had raised some of the same issues raised by Defendant here. Finally, Defendant filed an "amended unsworn declaration" in support of his motion to dismiss.

The Court held a hearing on October 19, 2006. For reasons set forth on the record in open court, the Court granted Defendant's motion to dismiss under Rule 12(b)(6) with respect to Plaintiff's request for determination of non-dischargeability of debt under § 523(a)(2) and (6) of the Bankruptcy Code. The Court also granted Defendant's motion to dismiss Plaintiff's objection to discharge under § 727(a)(3) and (5) of the Bankruptcy Code. The Court denied Defendant's motion to dismiss Plaintiff's request for determination of non-dischargeability under § 523(a)(4) and denied Defendant's motion to dismiss Plaintiff's objection to discharge under § 727(a)(4). The Court also denied Defendant's motion for summary judgment on both of those claims.

Defendant has now filed a motion for reconsideration. Defendant requests that the Court reconsider its decision to deny Defendant's motion under Fed. R. Civ. P. 12(b)(6) with respect to Plaintiff's request for determination of non-dischargeability under § 523(a)(4) and reconsider its decision to deny Defendant's request for summary judgment, or alternatively to dismiss, with respect to Plaintiff's objection to discharge under § 727(a)(4).

### III. Applicable Standard for Reconsideration

L.B.R. 9024-1(a) (E.D.M.) requires that a motion for reconsideration be served not later than

-2-

06-04852-pjs    Doc 53    Filed 11/30/06    Entered 11/30/06 16:46:28    Page 2 of 15

ten days after entry of the order or judgment sought to be reconsidered. Defendant's motion is timely. L.B.R. 9024-1(b) provides that no response to the motion and no oral argument thereon shall be allowed unless the Court otherwise directs. L.B.R. 9024-1(c) sets forth a standard for the Court to apply to motions for reconsideration:

> **(c) Grounds.** Generally, and without restricting the discretion of the Court, a motion for rehearing or reconsideration which merely presents the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

The Court concludes that there is no need for a response to the motion nor oral argument in this case. However, the Court has determined to write this opinion to address the issues raised by Defendant's motion.

### IV. Reconsideration of the Denial of Defendant's Motion to Dismiss the § 523(a)(4) Non-Dischargeability Claim

Defendant first requests that the Court reconsider its decision to deny Defendant's motion under Fed. R. Civ. P. 12(b)(6) with respect to Plaintiff's request for determination of non-dischargeability under § 523(a)(4) of the Bankruptcy Code. In deciding a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), the Court must construe the complaint in the light most favorable to Plaintiff. See Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001) (citations omitted). The Court must accept all factual allegations as true and determine whether Plaintiff may prove a set of facts that would entitle it to relief. Id. The Court may not grant a motion under Fed. R. Civ. P. 12(b)(6) based upon disbelief of the allegations contained in Plaintiff's complaint. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of Plaintiff's complaint and should not be granted unless it appears

-3-

beyond doubt that Plaintiff can prove no set of facts in support of its claim which would entitle it to relief. Id.

The complaint alleges that Defendant operated a construction business (Compl. ¶ 7) and violated the Michigan Builders' Trust Fund Act, Mich. Comp. Laws Ann. § 570.151-.153 ("MBTFA"), when he failed to pay for building supplies purchased from Plaintiff (Comp. ¶ 10) out of funds held in trust for Plaintiff under the MBTFA (Compl ¶ 18). This is the basis for Plaintiff's non-dischargeability claim under § 523(a)(4) of the Bankruptcy Code. That section of the Bankruptcy Code provides that a debt is non-dischargeable if it is "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." Defendant asserts that a defalcation non-dischargeability claim is limited to those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor. See Commonwealth Land Title v Blaszak (In re Blaszak), 397 F.3d 386, 391-92 (6th Cir. 2005); In re Garver, 116 F.3d 176 (6th Cir. 1997). Defendant concedes that the MBTFA satisfies the express trust requirement of § 523(a)(4) under controlling Sixth Circuit precedent, Carlisle Cashway, Inc. v. Johnson (In re Johnson), 691 F.2d 249 (6th Cir. 1982), but argues that as to Defendant, Plaintiff's complaint fails to identify any express or technical trust relationship that could give rise to a non-dischargeable debt under § 523(a)(4). In his amended unsworn declaration, Defendant states that any building contract with Plaintiff was made not by him individually, but by Cronk & Tocco, Inc., a corporation. (Docket No. 33 at ¶ 5.) Defendant admits that he has been the "sole shareholder" of that corporation since 2000 and its "president" since 2002. (Id. ¶ 2.) The declaration also states that "at no time" did Defendant "operate a construction business except to the extent that [his] involvement with Cronk & Tocco could be described as such." (Id. ¶ 16.)

The essence of Defendant's argument is that he is not liable as an individual under the MBTFA because he is not a "contractor" and thus cannot be trustee of an express trust under the MBTFA because the contracting party was Cronk & Tocco, Inc., a corporation. Defendant acknowledges that there is a body of case law finding individuals liable under the MBTFA even when the signatory to the contract is a corporation, but Defendant reasons that the courts that have imposed liability on the individuals in those cases have not done so based upon a finding that the individual was a "contractor." Defendant concludes that such courts have instead imposed liability on some other theory and that, whatever the theory is, it is not based upon the existence of an express trust, but instead is based at most upon the existence of a trust *ex maleficio*.

Trusts *ex maleficio* arise upon an act of wrongdoing and are imposed even where there is no fiduciary relationship before the act of wrongdoing occurs. Defendant argues that such trusts are insufficient as a matter of law to meet the express trust requirement necessary for a non-dischargeable debt under § 523(a)(4). See Davis v. Aetna Acceptance Co., 293 U.S. 328, 333-34 (1934) ("It is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee *ex maleficio*. He must have been a trustee before the wrong and without reference thereto."); Carlisle Cashway, Inc. v. Johnson (In re Johnson), 691 F.2d 249, 252 (6th Cir. 1982) (addressing non-dischargeability under § 523(a)(4) based on the MBTFA and finding that "the requisite trust relationship must exist prior to the act creating the debt and without reference to it") (citing Davis v. Aetna Acceptance, 293 U.S. at 333-34); Hunter v. Philpott, 373 F.3d 873 (8th Cir. 2004) (addressing § 523(a)(4) and a trust *ex maleficio* in the context of a corporate officer and employee contributions under a collective bargaining agreement).

In rendering its opinion at the October 19, 2006 hearing, the Court examined the MBTFA

and cases construing it. Section 570.151 of the MBTFA provides that

> the building contract fund paid by any person to a contractor, or by such person or contractor to a subcontractor, shall be considered by this act to be a trust fund, for the benefit of the person making the payment, contractors, laborers, subcontractors or materialmen, and the contractor or subcontractor shall be considered the trustee of all funds so paid to him for building construction purposes.

Mich. Comp. Laws Ann. § 570.151. In concluding that Plaintiff stated a claim upon which relief could be granted under § 523(a)(4) of the Bankruptcy Code, the Court considered a number of cases analyzing the MBTFA, both from Michigan and federal courts. Defendant's motion for reconsideration states that this Court erred because it (i) "primarily" relied upon People v. Brown, 610 N.W.2d 234 (Mich. Ct. App. 2000) and the unpublished opinion in In re Kriegish, No. 02-1610, 2004 WL 346041 (6th Cir. Feb. 23, 2004) in denying Defendant's motion; and (ii) based its decision "upon arguments which had not been articulated by the Plaintiff with any specificity." (Def.'s Mot. for Reconsideration ¶ 6.A.)

First, Defendant is incorrect in stating that the Court relied "primarily" upon People v. Brown and In re Kriegish. In reaching its decision denying Defendant's motion under Fed. R. Civ. P. 12(b)(6), the Court observed that there are numerous opinions that have held an individual liable as a "contractor" under the MBTFA even in instances where the signatory to the contract at issue is a corporation and not such individual. See Au Bon Pain Corp. v. Artech, Inc., 653 F.3d 61, 75 (2d Cir. 1981) (finding a corporate officer civilly liable under the MBTFA); Trustees of the Michigan Regional Council of Carpenters Employee Benefits Fund v. Accura Concrete Walls, Inc., 408 F. Supp. 2d 370, 373 (E.D. Mich. 2005) (relying on People v. Brown in finding president of corporation liable based on his collection of fringe benefit contributions and failure to make payments; see also Elmer's Crane & Cozer, Inc. v. AWM Corp., 2006 WL 1716775 (Mich. Ct. App.

-6-

June 22, 2006); Motor City Electric Co. v. Dumas Concepts in Building, Inc., 2006 WL 1237324 (Mich. Ct. App. May 9, 2006); People v. Perry, No. 237822, 2003 WL 22316914 at * 3 (Mich. Ct. App. Oct. 9, 2003) (interpreting and applying the ruling in People v. Brown as defining who may be a "contractor" under the MBTFA, and rejecting the defendant's argument that he was not a "contractor" but merely an employee of the contractor). None of these cases is binding, but they do present a body of law that the Court considered in denying Defendant's motion. From those cases, the Court chose to highlight Brown, Kriegish and Accura Concrete in its bench opinion.

Second, to the extent that the Court did rely upon Brown and Kriegish, the Court is not convinced that such reliance was misplaced. The Court placed significant weight on People v. Brown because in that case the Michigan Court of Appeals was confronted with exactly the same argument made by Defendant in this case, only in the context of imposing criminal liability rather than civil liability under the MBTFA. In observing that the term "contractor" is not defined in the MBTFA, the Michigan Court of Appeals nevertheless specifically rejected the defendant's argument in that case that "she was not a 'contractor' within the meaning of the MBTFA" because she was only an individual who had signed a construction contract on behalf of a corporation that was itself the contractor. People v. Brown, 610 N.W.2d at 237. The Michigan Court of Appeals rejected that argument as follows:

> Defendant contends that because [the plaintiff] contracted with [the corporation] for the construction of the dwelling, only [the corporation] -- as the "contractor" -- could be held criminally accountable for the misappropriation of [the plaintiff]'s funds under the MBTFA. We disagree.

Id.

In his motion for reconsideration, Defendant points to another section of the Brown opinion, which addressed the sufficiency of the evidence at trial. The court concluded that "there was

-7-

sufficient evidence presented that defendant personally caused the misappropriation of construction funds under the MBTFA, and she therefore could be prosecuted under the statute **even though she technically was not the "contractor"** for the [ ] project." Id. at 239 (emphasis added). Defendant interprets the Brown court's statement that the defendant in that case was "technically not the 'contractor'" as meaning that she was not a "contractor" subject to liability under the MBTFA. From this, Defendant concludes that the Brown court must have premised its finding of liability upon a different theory, arising out of evidence that demonstrated her participation in some wrongdoing. Read in a vacuum, the statement relied upon by Defendant could arguably support Defendant's position. However, a better reading of this statement, within the opinion as a whole and within the context of the evidentiary discussion in which this statement was made, is that the court noted that the defendant was not "technically" the contractor only in the narrow sense that she was not a signatory to the contract, but could still be found liable as a "contractor" under the MBTFA. Indeed, the court made it clear that the defendant was being prosecuted "under" the MBTFA, and not under some other theory of liability.[1] Id. at 238.

This reading is further supported by a discussion at the end of the Brown opinion that addressed the defendant's constitutional challenge to the MBTFA. The defendant had argued "that (1) because the MBTFA fails to define the terms 'contractor' and 'appropriation,' and (2) because the MBTFA does not specifically indicate that an officer of a corporate contractor may be held accountable under the statute, it is unconstitutionally vague as applied to her . . . ." Id. at 242. Although "[t]he retroactive application of an unforeseeable interpretation of a criminal statute . . .

---

[1] A trust *ex maleficio* is an equitable remedy. See Stephenson v. Golden, 276 N.W. 849, 860 (Mich. 1937). The application of an equitable doctrine would seem to be at odds with the criminal prosecution and conviction of the defendant in Brown.

-8-

may violate the Due Process Clause," the Brown court "discern[ed] no unforeseeable interpretation of the MBTFA." Id. (citation omitted). Instead, the

> defendant should have known that as an officer of [the corporation], she could be held criminally responsible if she personally caused [the corporation] to violate the MBTFA. Accordingly, the failure of the MBTFA to specifically define "contractor" as including a corporate contractor's officer who personally misappropriates funds does not render the statute unconstitutionally vague as applied to [the] defendant.

Id. (emphasis added). The Brown court was clearly basing its ruling in affirming the defendant's conviction on an interpretation of the term "contractor" under the MBTFA.

In the unpublished Court of Appeals decision in In re Kriegish, No. 02-1610, 2004 WL 346041 (6th Cir. Feb. 23, 2004), the Sixth Circuit affirmed a published decision of the district court. In Kriegish v. Lipan (In re Kriegish), 275 B.R. 838 (E.D. Mich. 2002), the district court held a debt to be non-dischargeable under § 523(a)(4) with respect to an individual who, like Defendant in this case, was a corporate officer and shareholder of a corporation that was the signatory to the contract in question. This Court found the opinion to be well reasoned and persuasive. Contrary to Defendant's motion for reconsideration, the Court did not "rely" upon Kriegish as "precedential" but instead mentioned it as one of numerous cases that have imposed liability under the MBTFA upon an individual who was an officer and shareholder of a corporation that was a signatory to a building construction contract.

There are many other cases that have imposed personal liability under the MBTFA upon individuals who, although not themselves a signatory to a construction contract, were found to be sole shareholders and officers of a closely held corporation that was itself a signatory to a construction contract. Not all of those cases have predicated a finding of personal liability upon an act of personal wrongdoing. In Accura, the court first reviewed Brown and Au Bon Pain and stated

that, when read together, those cases support the proposition that a corporate officer may be civilly liable under the MBTFA:

> In People v. Brown, the Michigan Court of Appeals was faced with the imposition of criminal liability under the MBTFA against a corporate officer. The court of appeals held that an officer was subject to criminal liability. Importantly, the court of appeals stated that its conclusion was in accordance with Au Bon Pain in which the court held that an officer of a corporate contractor could be held civilly liable under the MBTFA. Reading Au Bon Pain and Brown together, it is fair to conclude that a corporate officer may be civilly liable under the MBTFA.

Accura Concrete Walls, Inc., 408 F. Supp. 2d 370, 373 (E.D. Mich. 2005) (citing People v. Brown, 610 N.W.2d 234 (Mich. Ct. App. 2000) and Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61 (2d Cir. 1981)) (internal quotation marks omitted). Significantly, the Accura court imposed such liability in that case even though there was no finding of any personal misappropriation or wrongdoing by the defendant. Moreover, the court specifically rejected the defendant's assertion that he could not be held liable under the MBTFA because he had acted in good faith: "[The defendant] says that he acted in 'good faith' in believing that he did not have to make the required contributions for covered projects. Even assuming [the defendant] is correct, that does not excuse his obligations under the MBTFA." Id. Given the absence of wrongdoing and the statement regarding the defendant's good faith, it would be a stretch for this Court to assume that the Accura court was *sub silentio* imposing liability through a trust *ex maleficio*.

Although Defendant concedes that there are many cases imposing personal liability upon an individual corporate officer, he is quick to point out that such personal liability does not create a non-dischargeable debt under § 523(a)(4) absent the existence of an express trust. That is true. Defendant is correct that a trust *ex maleficio* is insufficient to satisfy the express trust requirements of § 523(a)(4). The trust must have been in existence prior to any act creating a debt. See Davis v.

Aetna Acceptance Co., 293 U.S. 328, 333-34 (1934); In re Johnson, 691 F.2d 249, 252 (6th Cir. 1982). However, Defendant is not correct when he states that the cases that have imposed personal liability upon corporate officers or shareholders of a corporate signatory to a construction contract must have all done so under a theory that could only be based upon a trust *ex maleficio*. Rather than attribute the decision to impose personal liability in such cases to a trust *ex maleficio* theory that is not articulated or even mentioned in those cases, there is a more likely alternative. It is more accurate to observe that the cases that have imposed liability on an individual who did not sign the construction contract did so because, in the particular circumstances of those cases, typically involving sole shareholders and controlling officers of a corporation that had signed a construction contract, the court found that the individual was deemed to be a "contractor," and therefore a trustee under the express trust imposed by the MBTFA. This interpretation is consistent with the broad construction to be given to the MBTFA in view of its remedial purposes. See People v. Brown, 610 N.W.2d at 238 ("[B]ecause the MBTFA is a remedial statute, designed to protect people of the state from fraud in the construction industry, it should be construe[d] . . . liberally for the advancement of the remedy.") (internal quotation marks and citations omitted).

Although federal law determines the existence of a fiduciary relationship for purposes of § 523(a)(4), the pertinent question in this case is who is a "contractor" under the MBTFA. This is a matter of state law in Michigan. Just because Plaintiff did not allege Defendant to be a signatory to a construction contract does not mean that Defendant could not be found to be a "contractor" under the MBTFA and the numerous cases construing it. If it can be shown that Defendant is a "contractor" under the MBTFA, then he may be a trustee under the express trust created by that act. It cannot be said at this point in this adversary proceeding that Plaintiff can prove no set of facts that

could entitle it to relief. If Plaintiff proves that Defendant is a "contractor" under the MBTFA, as that term has been construed by both Michigan courts and federal courts, then Plaintiff may well be entitled to a finding that it holds a non-dischargeable debt under § 523(a)(4) even without proving a specific act of misappropriation or wrongdoing that might also give rise to some other theory of personal liability against Defendant. That is sufficient to survive Defendant's Rule 12(b)(6) motion. Defendant's motion for reconsideration "presents the same issues ruled upon by the Court" at the October 19, 2006 hearing. Defendant's restatement of these arguments does not meet the standard of a palpable defect under L.B.R. 9024-1(c).

Defendant's motion also asserts that a palpable defect in the Court's ruling exists because "the Court's decision . . . was made based upon arguments which had not been articulated by the Plaintiff with any specificity. Rather, they were raised by the Court for the first time in its ruling and Defendant was afforded no opportunity to respond to those arguments." (Def.'s Mot. for Reconsideration ¶ 6.A.) Defendant's brief in support of the motion for reconsideration does not explain which are the offending arguments. It is difficult for the Court to identify any arguments that could have surprised Defendant in its ruling given the parties' extensive briefing and well developed arguments at the hearing. The Court finds no palpable defect.

Accordingly, the Court concludes that Defendant's motion for reconsideration of the Court's denial of Defendant's motion for dismissal under Rule 12(b)(6) must be denied because it does not meet the standards set forth in L.B.R. 9024-1(c).

### V. Reconsideration of Denial of Defendant's Motion to Dismiss or for Summary Judgment on the § 727(a)(4) Objection to Discharge Claim

Defendant also argues that the Court should reconsider its denial of Defendant's request for summary judgment with respect to Plaintiff's objection to discharge under § 727(a)(4) of the

Bankruptcy Code. That section provides that a debtor shall not receive a discharge if "the debtor knowingly and fraudulently . . . made a false oath or account." Plaintiff's complaint alleges that Defendant made a false oath in his bankruptcy petition and schedules, and in his sworn testimony at his § 341 meeting, by "intentionally under valuating his assets and income" and by failing "to list all of his assets in his petition and schedules." (Compl. ¶¶ 25, 26 and 29.) It is true that the allegations by Plaintiff do not provide much specificity. However, for reasons explained on the record, the Court concluded that Defendant's motion under Fed. R. Civ. P. 12(b)(6) must be denied with respect to this count.

Defendant claims that the Court erred and that he is entitled to summary judgment with respect to this count under Fed. R. Civ. P. 56 because there is no genuine issue of material fact. Plaintiff's argument is premised upon his submission of an "amended unsworn declaration of Edward W. Cicero in support of motion for dismissal." (Docket No. 33.) Not surprisingly, this amended unsworn declaration declares that the statements made by Defendant in his bankruptcy petition, schedules of assets and liabilities and statement of financial affairs are true and accurate to the best of his knowledge, information and belief. (Id. ¶ 17.) However, even Defendant admits that there is one exception to that statement and it pertains to Defendant's understanding about certain amounts that were paid to him by the corporation, Cronk & Tocco, Inc., during the year prior to Defendant filing this bankruptcy case. Apparently, after filing his bankruptcy petition, schedules of assets and liabilities and statement of financial affairs, Defendant was informed that payments made by Cronk & Tocco, Inc. to him should have been listed in item 3b of his statement of financial affairs. According to his unsworn declaration, Defendant now asserts that "the omission of this information was not knowing or fraudulent" and that he was "not aware that the information was

-13-

called for in item 3b." Defendant complains that Plaintiff's response to Defendant's motion for summary judgment as to the § 727(a)(4) count did not raise a genuine issue or material fact regarding the existence of a false oath in this case, but even Defendant concedes that there is information contained in his answer to item 3b of his statement of financial affairs that was not accurate. It may well turn out that Plaintiff is unable to prove that Defendant made a knowing and fraudulent false oath in his schedules of assets and liabilities and statement of financial affairs. But the Court concludes that Defendant's knowledge and intent are genuine issues of material fact that preclude the grant of summary judgment on the § 727(a)(4) count at this stage in this adversary proceeding. See Hoover v. Radabaugh, 307 F.3d 460, 467 (6th Cir. 2002) ("When the defendants' intent is at issue, summary judgment is particularly inappropriate.") (internal quotation marks and citation omitted). Accordingly, the Court concludes that Defendant's motion for reconsideration of the Court's denial of his request for summary judgment with respect to the § 727(a)(4) count must be denied. For the same reasons, it does not appear beyond doubt that Plaintiff can prove no set of facts in support of its § 727(a)(4) claim which would entitle it to relief. See Bovee v. Coopers & Lybrand C.P.A., 272 F.3d 356, 360 (6th Cir. 2001). Consequently, there was no palpable defect in the Court's denial of Defendant's motion to dismiss under Rule 12(b)(6).

## VI. Conclusion

For the reasons set forth in this opinion, the Court finds that Plaintiff's motion for reconsideration does not meet the standard of L.B.R. 9024-1(c) because it does not demonstrate a palpable defect by which the Court and the parties were misled, the correction of which would show that a different disposition of the case must result. Nor is the Court convinced that its rulings were erroneous. The Court will enter a separate order consistent with this opinion.

**NOT FOR PUBLICATION**

```
Signed on November 30, 2006
                                    /s/ Phillip J. Shefferly
                                Phillip J. Shefferly
                                United States Bankruptcy Judge
```